# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

BRENDA KELLY                          :
                                      :
            Appellant,                :
     v.                               :          CASE NO.: 16-3303
                                      :
UNIVERSITY OF PENNSYLVANIA            :
HEALTH SYSTEM, d/b/a PENN             :
MEDICINE                              :
                                      :
            Appellee.                 :
                                      :

## <u>APPELLANT'S BRIEF</u>

Respectfully Submitted,

**KARPF, KARPF & CERUTTI, P.C.**

*/s/ Julia W. Clark*
Julia W. Clark, Esq.
3331 Street Road
Two Greenwood Sq., Suite 128
Bensalem, PA 19020
215.639.0801
PA Bar No.: 311688
Attorney for Appellant

Date: February 21, 2017

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………..…i

STATEMENT OF JURISDICTION.......................................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW…………………...…..2

STATEMENT OF RELATED CASES…….............................................................2

STATEMENT OF THE CASE………..…………………………………..……….3

STANDARD OF REVIEW……………………..…………………………………13

SUMMARY OF ARGUMENT............................................................................13

LEGAL ARGUMENT.........................................................................................14

CONLCUSION …………………………………………………..……....28

CERTIFICATIONS……………………………………………………….30

# TABLE OF AUTHORITIES

**Cases**

*Billings v. Town of Grafton*, 515 F.3d 39, 56 (1st Cir. 2008) .................................. 21

*Burdine*, 450 U.S. at 256, 101 S. Ct. at 1095 ......................................... 20

*Cookson v. Brewer Sch. Dep't*, 974 A.2d 276 (Me. 2009) ...................................... 21

*Doe v. C.A.R.S. Prot. Plus*, 527 F.3d 358, 369 (3d Cir. Pa. 2008) ......................... 30

*Doe v. C.A.R.S. Protection Plus, Inc.,* 527 F.3d 358, 370 (3d Cir. 2008) ............... 25

*EEOC v. Grane Healthcare Co.,* 2014 U.S. Dist. LEXIS 28477, 74, 29 Am.

Disabilities Cas. (BNA) 655 (W.D. Pa. 2014) ...................................... 25

*Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000).................... 14

*Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir.1994) ................................. 18

*Fuentes v. Perskie,* 32 F.3d 759, 765 (3d Cir. 1994) ................................. 22

*Fuentes v. Perskie*, 32 F.3d 759, 765 (3d. Cir. 1994) ............................. 19

*Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 921 (11th Cir. 1993) ..... 20

*Hernandez v. Spacelabs Med., Inc.* 343 F.3 1107 (9th Cir. 2003)......................... 25

*Jacobson v. Utah Dep't of Corr.*, 2006 U.S. Dist. LEXIS 22458 (D. Utah Apr. 18,

2006)..................................................................... 19

*Jalil,* 873 F.2d at 708 .................................................. 18

*Josey v. John R. Hollingsworth Corp.,* 996 F.2d 632, 638-39 (3d Cir. 1993)........ 21

*Kachmar v. Sungard Data Sys.,* 109 F.3d 173, 177 (3d Cir. 1997) ....................... 15

i

*Laxton v. Gap, Inc.*, 333 F.3d 572 (5th Cir. 2003) .................................................. 25

*Long v. Eastfield College,* 88 F.3d 300, 306-07 (5th Cir. 1996) ............................ 20

*Mato v. Baldauf,* 267 F.3d 444, 450 (5th Cir. 2001) ............................................... 20

*Sempier v. Johnson & Higgins,* 45 F.3d 724, 728 (3d Cir.) .................................... 14

*Shelton v. Univ. of Med. & Dentistry of N.J.,* 223 F.3d 220, 224 (3d Cir.2000) .... 13

*Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061 (3d Cir.1996) ......... 18

*Simpson v. Kay Jewelers, Div. of Sterling, Inc.,* 142 F.3d 639, 644-45 (3d Cir.

1998) .................................................................................................................. 21

*Terry v. Ashcroft*, 336 F.3d 128 (2nd Cir. 2003) ..................................................... 24

*Todd v. Brownlee,* 2006 U.S. Dist. LEXIS 13720 (D. Haw. Mar. 9, 2006) ........... 19

*Treaster v. Conestoga Wood Specialties, Corp.*, 2010 U.S. Dist. LEXIS 63257

(M.D. Pa. 2010) ................................................................................................ 24

*Waddell v. Small Tube Products, Inc.,* 799 F.2d 69, 73 (3d Cir. 1986) .................. 15

*Windham v. Time Warner, Inc.*, 275 F.3d 179 (2nd Cir. 2003) ............................... 24

**Statutes**

28 U.S.C.A. §1331 .................................................................................................... 1

28 U.S.C.A. §1367 .................................................................................................... 1

# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

BRENDA KELLY                                  :
                                              :
        Appellant,                     :
    v.                                        :    CASE NO.: 16-3303
                                              :
UNIVERSITY OF PENNSYLVANIA                    :
HEALTH SYSTEM, d/b/a PENN                     :
MEDICINE                                      :
                                              :
        Appellee.                      :
                                              :

## STATEMENT OF JURISDICTION

Appellant hereby avers as follows:

A.)   The District Court for the Eastern District of Pennsylvania has subject-matter jurisdiction over this matter because the claim arises under federal law.   28 U.S.C.A. §1331.   The District Court maintains supplemental jurisdiction over Appellant's Pennsylvania state claims because they arise out of the same facts and circumstances as his Federal law claims.   28 U.S.C.A. §1367;

B.)   The Third Circuit Court of Appeals has jurisdiction over this matter pursuant to Federal Rule of Appellate Procedure 3;

C.)   Appellant's Notice of Appeal was timely filed on August 3, 2016;

D.)   Appellant hereby asserts that her appeal is from a final order of the District Court that disposed of all Parties' claims.

1

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

A. Whether the District Court improperly concluded that Appellant failed to adduce sufficient evidence to make out the third element her prima facie case of disability discrimination claim under the ADA/PHRA at the summary judgment stage?

   Suggested Answer: Yes

B. Whether the District Court improperly concluded that Appellant had not adduced sufficient evidence of pretext to sustain her FMLA Retaliation claim at the summary judgment stage?

   Suggested Answer: Yes

C. Whether the District Court improperly concluded that Appellant had not adduced sufficient evidence of pretext to sustain her ADA/PHRA Discrimination and Retaliation claims at the summary judgment stage?

   Suggested Answer: Yes

Pursuant to LAR 28.01, Appellant asserts that these issues were properly preserved by the timely filing of a Notice of Appeal and that no further preservation of issue(s) was necessary beyond the District Court's adverse decision provided herein.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

There are no currently pending related cases in any court.

## STATEMENT OF THE CASE

Appellant (*hereinafter* "Ms. Kelly") brought claims to redress violations of the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §§ 2601 *et. seq.*), the Americans with Disabilities Act ("ADA" - 42 USC §§ 12101 *et. seq.*) and the Pennsylvania Human Relations Act(PHRA) by her former employer, University of Pennsylvania Health System, d/b/a Penn Medicine ("Appellee"). On June 24, 2016, Appellee filed a Motion for Summary Judgment as to all claims. JA30. On July 11, 2016, Ms. Kelly filed her response in opposition the Motion for Summary Judgement. JA30.   On August 2, 2016 the District Court issued an Order and Opinion granting Appellee's Motion in its entirety. JA30 The instant appeal ensued. JA30.

Ms. Kelly was employed with Appellee as a Communications Specialist from February 1991 until February 25, 2006. JA491-JA492. Ms. Kelly was then promoted to the position of Lead Communication Specialist and held that position for over nine years until she was demoted back to Communications Specialist (or "Operator") in March of 2015. *Id.* Ms. Kelly was terminated by Appellee in June of 2015 for an alleged progression of discipline.

Ms. Kelly suffers from several serious medical conditions, including Osteoarthritis, Hepatitis B and morbid obesity – Ms. Kelly testified that her

3

Osteoarthritis causes her severe pain and that she had been diagnosed as having bone on bone in both knees, that sitting down causes her pain and that she balances her time between sitting and staying mobile due to this pain. JA284 at 244:22-24, 245:1-8. The extensive record evidence shows that Ms. Kelly was suffering from these conditions, including severe Osteoarthritis, during all relevant time periods in this matter, and that she had an extensive history of treatment (including multiple surgeries) for her conditions. *See generally* JA549A-738.

Although Ms. Kelly had a history of taking time off with Appellee as a result of her serious health conditions/disabilities, her needs in this respect changed in the time period directly preceding her termination. See JA137-145 (showing a substantial increase in Ms. Kelly's use of consecutive days off in 2014 compared with most other years Ms. Kelly used FMLA). See also JA529. Most of this time off taken by Ms. Kelly was not taken on consecutive days and the large majority of this time was used for less than 8-hour increments (meaning that Ms. Kelly was only taking partial FMLA days on most of the 135 days she utilized intermittent leave). JA143- 145. Notably, Ms. Kelly did not take block/consecutive leaves during this two-year period leading up to 2014. JA139A-141.

During 2014 Ms. Kelly's FMLA/medical leave needs showed a notable change from the prior years. See JA137-145. Unlike the prior years where Ms.

4

Kelly primarily used partial intermittent days, Ms. Kelly required multiple consecutive/block leaves due to her medical conditions and required surgeries. *See* JA137A-138, JA429. Specifically, Ms. Kelly took a block/consecutive leave from June 2, 2014 through June 15, 2014. JA138A. Ms. Kelly then required an additional leave from July 14, 2014 through October 14, 2014 (some of which was designated as FMLA time and some of which was designated as "other medical leave"). JA137. In the two years prior to 2014, Ms. Kelly had only taken intermittent days off. JA139A-141.

Ms. Kelly experienced extreme hostility towards her medical conditions and need for leave (and other accommodations) from the time she returned to work following her medical leave in 2014 through the time of her termination. When Ms. Kelly returned from her leave in 2014, she made clear to her manager, Sophia Douglas, that she would require additional consecutive/block leaves for additional required surgeries. JA286 at 250:13-24, 251:1-11, JA288 at 259:1-10. *See also* Ms. Kelly's return to work letter from her doctor noting that the duration of her condition would be for "years". JA512. *See also* Ms. Kelly's Certification of Health Care Provider noting that Ms. Kelly's condition would be from "now" until "many year from now" and specifically identifying that Ms. Kelly is limited in doing anything that causes substantial hip or knee pain. JA513-514. This information was provided to Ms. Douglas in response to Ms. Douglas inquiring if

5

Ms. Kelly would need additional surgeries immediately upon Ms. Kelly's return from her 2014 leave. JA285 at 249:12-24, JA286 at 250:1-21. Moreover, Tammy Stewart, Ms. Kelly's other supervisor, testified that she was aware that Ms. Kelly would need additional surgeries. JA461A at 80:10-17, JA461.

In response to Ms. Douglas learning that Ms. Kelly would need additional surgeries, Ms. Kelly was informed by Ms. Douglas that Ms. Douglas was removing Ms. Kelly from her current group and placing her into a smaller group with less individuals to supervise (Plaintiff testified that prior to this, she was responsible for supervising 10 to 12 operators, but after this transfer she was only responsible for supervising 4-5 operators and felt as though responsibilities were being taken away from her due to her FMLA needs). *Id.* Moreover, in that same timeframe and in response to learning that Ms. Kelly would need additional surgeries, Ms. Douglas suggested to both Ms. Kelly and Joanne Crowley in HR that Ms. Kelly go out on long-term disability (thereby implying that Ms. Douglas did not believe that Ms. Kelly was able to do her job). JA473A at No. 5. *See also* JA530; JA392A at 111:13-24, 112:1-2. JA349 at 93:4-8. Ms. Douglas also further told Ms. Kelly that she was a great employee, that she did a very good job, ***but that she was out too much and suggested that Ms. Kelly go back to being an operator***. JA286A 253:3-19.

Just days after Ms. Kelly returned from her leave in 2014, Ms. Douglas sent an email to Joann Crowley on November 4, 2014 informing Ms. Crowley that ***Ms. Kelly needed to be "monitored carefully"*** (referencing her prior FMLA usage and in response to Ms. Kelly providing detailed information about her medical conditions and a request for an accommodation). JA530. Ms. Douglas testified at her deposition that Ms. Kelly was "a person who would always apply for it" [meaning FMLA leaves]. JA398 at 136:16-23, and that she suspected that Ms. Kelly was using FMLA for another purposes. JA389A 99:7-17. In addition to the hostility Ms. Kelly experienced from Ms. Douglas, Ms. Kelly testified that Ms. Stewart also made hostile comments to her in connection to her leave including stating "you were out, now everybody's out". JA286 at  253:12-19. After coming back from her leave in 2014, Ms. Kelly was told by Ms. Stewart that Ms. Kelly needed to slow down on her FMLA usage. JA228 at 18:3-9. Ms. Stewart also sent an email to Joann Crowly on March 16, 2015, identifying that she had a problem with the way that Ms. Kelly was attempting to utilize her intermittent leave. JA536.

Additionally, there is substantial evidence that during the same timeframe when Ms. Kelly began to experience hostility and blatant frustration from Ms. Stewart and Ms. Douglas, there was a great deal of frustration expressed in general towards employees' FMLA needs. For instance, Ms. Stewart expressed her

7

frustration to Ms. Kelly regarding the use of FMLA in the department, stating *"why can't these people just show up for work"*, further noting that she would have to speak with Ms. Douglas about it and that they *would have to do something about the FMLA usage*. JA286 at 251:21-24. Ms. Crowley confirmed this blatant frustration and hostility expressed by Ms. Douglas and Ms. Stewart by testifying that both Ms. Douglas and Ms. Stewart expressed frustration to her in connection with Ms. Kelly's need for leave, noting that both stated that they *"just want people to come to work"* and that Ms. Douglas had specifically memorialized this in an email. JA351A at 102:16-24, 103:1-4. Ms. Crowley further testified that Ms. Douglas had noted this frustration in general as well regarding the use of FMLA in the department overall, noting again that *Ms. Douglas had informed her that she just didn't understand why people couldn't just come to work*. JA341 at 59:14-17. Although Ms. Crowley advised Ms. Douglas that FMLA was the law and she would have to comply, Ms. Crowley testified that Ms. Douglas was still frustrated and that she came to Ms. Crowley on more than one occasion to express her frustration. JA339A at 54:15-24, 55:1-6, 56:9-24, JA340A at 57:1-24, 58:1-24, 59:1-17, JA341A at 61:16-21. Ms. Crowley also confirmed that Ms. Stewart had expressed similar frustrations on more than one occasion as well. JA341A at 63:1-24, 64:1-10.

8

In addition to Ms. Kelly informing Ms. Douglas that she would need additional surgeries in 2015 and would require time off for those, Ms. Kelly also sought additional FMLA leave in February of 2015 and Plaintiff continued to require intermittent time off in 2015. JA137. Ms. Kelly also sought other accommodations related to her health conditions upon returning from her leave in 2014 and experienced hostility from her managers as a result. Specifically, Ms. Kelly requested the ability to utilize a different entrance that would limit her need to walk a far distance - in response to making this request to Ms. Douglas, Ms. Douglas immediately went down to speak with Robert the security guard and told him not to allow Ms. Kelly to use this special entrance (without even speaking with Ms. Kelly first to advise her of the decision). JA285A at 246:14-24, 247:1-24, 248:1-6. Ms. Douglas further advised Ms. Kelly that she could not allow her to do this because then she would need to do it for everyone. *Id.* Ms. Kelly also requested the ability to use any vacation or sick time she had available without being required to go through the normal request period for this use in the event she needed to utilize it for episodic pain. JA274A at 243:17-24, 244:1-8. Ms. Kelly also requested that she be permitted to take periodic breaks when she was experiencing pain, but testified that this request was denied and that she was only permitted to do this on her breaks rather than as needed for her pain. JA272 at 194:21-24, 195:1-13. When Ms. Kelly sat down to speak with Ms. Douglas about

her medical conditions and need for accommodations, Ms. Kelly explained that Ms. Douglas did not want to hear about it and was irritated by it. JA284 at 243:6-24, 244:1-8. 245:18-24, 246:1-6. Moreover, after learning of Ms. Kelly's condition and her limitations, Ms. Douglas began corresponding with HR (Joann Crowley) regarding various performance concerns Ms. Douglas allegedly had about Plaintiff - *this was the first time that Ms. Douglas ever reached out to Ms. Crowley regarding any of Ms. Kelly's alleged performance concerns in the history of Ms. Douglas' supervision of Ms. Kelly*. JA369 at 18:12-19. In fact, Ms. Douglas could not recall ever reaching out to anyone in HR regarding Kelly's performance prior to that timeframe (even though she had supervised Ms. Kelly for years). JA369 at 18:20-24, 19:1-16.

In addition to the comments and hostility from Ms. Douglas and Ms. Stewart about Ms. Kelly's condition and need for time off/other accommodations, Ms. Kelly's overall working environment changed drastically upon her return from her 2014 medical leave through the time of her termination. For example, in addition to suggesting that Ms. Kelly accept a demotion, Ms. Douglas began to take away projects from Ms. Kelly upon Ms. Kelly's return from leave. JA230 at 27:7-23, 28:1-6. Specifically, in response to Ms. Douglas learning that Ms. Kelly would need additional surgeries, Ms. Kelly was informed by Ms. Douglas that Ms. Douglas was removing Ms. Kelly from her current group and placing her into a

10

smaller group with less individuals to supervise (Ms. Kelly testified that prior to this, she was responsible for supervising 10 to 12 operators, but after this transfer she was only responsible for supervising 4-5 operators and felt as though responsibilities were being taken away from her due to her FMLA needs). *Id.* Ms. Douglas also changed the way that she spoke to Ms. Kelly towards the end of Ms. Kelly's employment with Appellee, stopped speaking to her and "shut down on her." JA230A at 29:13-24, JA231 at 30:1-3; JA483 at No. 7.

Ms. Kelly then began to receive write-ups over the course of the next several months leading up to her demotion and ultimate termination regarding various performance issues (all of which she disputes). Ms. Kelly's supervisors attempted to paint a picture of Ms. Kelly being a problematic employee with a long history issues (warranting demotion and ultimate termination), however this is contradicted by the last two performance reviews Ms. Douglas issued to Ms. Kelly. JA517-518. In 2012, Ms. Douglas noted that Ms. Kelly had "exceeded" her expectations, that Ms. Kelly had excellent communication skills, and that Ms. Douglas was "truly proud" of Ms. Kelly. JA517. Furthermore, in 2013, Ms. Douglas assigned Ms. Kelly an overall rating that was "better than good". JA 518. JA 405 at 161-170, JA385A at 84:11-17. Moreover, Ms. Stewart, who also supervised Ms. Kelly, provided testimony that during the time that Ms. Kelly worked under her as a lead (in the approximate four years before Ms. Kelly was

11

terminated), Ms. Kelly displayed the qualities and behavior that a good lead is required to have. In addition to disputing the validity of each and every write-up she received in that period, Ms. Kelly described the period from the time that she got back from her last consecutive FMLA/medical leave to the time of her termination as terrible. JA268 at 180:23-24, 181:1-24, 182:1-14. JA287A at 11-24, JA288 at 258:1-6. Ms. Kelly testified that during that time period she was being picked on and harassed and constantly nitpicked. *Id.* This harassment included Ms. Douglas constantly monitoring Ms. Kelly's phone line and listening into her calls in the hopes that she would find an excuse to write Ms. Kelly up. JA260 at 147:6-11. This harassment was so apparent that others in Ms. Kelly's department noticed it. *See generally* JA505A-510.

With respect to the final incident that Appellee alleges lead to Ms. Kelly's termination, Ms. Kelly presented evidence that she was treated far more harshly regarding this incident than others she had observed in her department. Specifically, Ms. Kelly testified that during her experience as a Lead, she was well aware of other employees who had committed similar infractions with no resulting discipline. JA287 at 255:8-24, 256:1-24, 257:1-7. Moreover, these kinds of errors, including the improper handling of codes or rapid responses, were made frequently in the department with absolutely no consequences to the individuals who made

the mistakes. JA5088-90. In fact, Ms. Douglas specifically testified that she had never terminated someone for this kind of infraction. JA382 69:20-24.

## STANDARD AND SCOPE OF REVIEW

This Court conducts a plenary review of a District Court's decision granting summary judgment and the Court may examine the entire record on appeal. *See Shelton v. Univ. of Med. & Dentistry of N.J.,* 223 F.3d 220, 224 (3d Cir.2000).

## SUMMARY OF ARGUMENT

The District Court improperly held that Ms. Kelly failed to adduce sufficient evidence of the third element of her prima facie case of disability discrimination under the ADA and PHRA by failing to consider the record as a whole in considering this element. The District Court further neglected to consider the evidence as a whole in concluding that Ms. Kelly failed to show pretext as to her FMLA retaliation claims, as well as her ADA/PHRA claims. In reaching its ruling, the District Court completely discounted the clear evidence of hostility shown towards Ms. Kelly's conditions and need for leave and did not construe this evidence in the light most favorable to Ms. Kelly. Overall, the District Court failed to construe the facts in a light most favorable to Ms. Kelly, improperly weighed the evidence, and made credibility determinations, thereby usurping the role of a jury. This case should be remanded for a trial.

13

## ARGUMENT

**(A.)  The District Court Improperly Concluded that Ms. Kelly Could not Establish the Third Element of Her ADA Discrimination Claim**

The District Court erred in concluding that Ms. Kelly failed to present sufficient evidence to establish the third element of her prima facie case, the causal connection between her adverse employment action and her health condition/disability. In reaching this conclusion, the District Court improperly failed to construe all evidence in the light most favorable to Ms. Kelly and further neglected to consider that the burden to establish a prima facie case "is not intended to be onerous." *Sempier v. Johnson & Higgins,* 45 F.3d 724, 728 (3d Cir.).

In *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000), the Third Circuit reiterated that the existence of a causal link between protected activity and an adverse employment action "must be considered with a careful eye to the specific facts and circumstances encountered." There are no exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference. *Kachmar v. Sungard Data Sys.,* 109 F.3d 173, 177 (3d Cir. 1997); *See also Waddell v. Small Tube Products, Inc.,* 799 F.2d 69, 73 (3d Cir. 1986).

14

When construing the facts in the light most favorable to Ms. Kelly, there is a more than enough evidence in the record as a whole to establish a causal link between Ms. Kelly's disability and her termination. In addition to the evidence of pretext as outlined below, there was blatant antagonism shown towards Ms. Kelly in connection to her medical condition such that a jury could reasonably conclude that there was a causal connection between her disability and her termination (as well as her demotion and disciplinary actions). For instance, immediately upon informing Ms. Douglas of the specific nature of her health conditions in October/November of 2014, she was subjected to considerable hostility and antagonism from her management. As outlined below in Ms. Kelly's pretext argument as well as statement of the case, Ms. Kelly was consistently questioned about whether or not she could do her job in light of her health conditions by the same individuals who made the decision to discipline, demote and finally terminate her. In fact, there is evidence in the record that upon learning of Ms. Kelly's condition, Ms. Douglas specifically suggested that Ms. Kelly go out on long-term disability (thereby implying that Ms. Douglas did not believe that Ms. Kelly could continue to work) and that Ms. Kelly consider accepting a demoted to an Operator position.

15

Additionally, as set forth in detail, Ms. Kelly was also questioned about when she would have additional surgeries and was informed that although she was a good employee, she was out too much. Although this particular comment was made in connection to her need for a reasonable accommodation (time off), the District Court incorrectly concluded that this evidence could not be used to support the causal connection between Ms. Kelly's disability and her adverse employment action. Ms. Kelly's need for leave/reasonable accommodations were directly connected to her disability. These comments, construed in the light most favorable to Ms. Kelly, can and should have been considered as evidence of her manager's discriminatory view about Ms. Kelly's ability to do her job in connection to her medical condition. Additionally, Ms. Kelly testified that Defendant refused to provide her with certain accommodations, including the use of a closer entrance to reduce the distance she had to walk, proper access to the handicap bathroom stall, and the ability to walk around when she was stiff or in severe pain (outside of scheduled break times). This too provides evidence of hostility that jury could consider in connection to the third element of her disability discrimination claim.

Moreover, Ms. Kelly was issued multiple written warnings for issues that Ms. Kelly disputes, was constantly nitpicked over minor issues, was demoted from a lead position that she held for over nine years and was ultimately terminated for

16

something that Ms. Kelly testified was a very common error in her department. Ms. Kelly testified that prior to coming back from her last leave (which was the *first* time that Ms. Douglas learned about her specific medical condition and the limitations she has because of it), Ms. Douglas gave her positive feedback and praise regarding her performance. However, Ms. Kelly testified that this changed abruptly when she returned from her last leave and that she was constantly harassed by management upon her return.

The statements that Ms. Douglas made regarding Ms. Kelly's abilities in light of her condition are enough on their own to establish the causal link. A jury accepting those statements as true could certainly conclude that the adverse actions Ms. Kelly was subjected to were related to her disability and/or Defendant's perception about those conditions. Therefore, there was sufficient evidence in the record as a whole to establish the third element of her disability discrimination claim and the District Court incorrectly held that Ms. Kelly failed to make out the third element of her ADA disability discrimination claim.

### (B.)    The District Court Improperly Concluded that Ms. Kelly Could Not Establish Pretext as to Her FMLA and ADA Claims

To show pretext, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the

17

employer's articulated legitimate reasons; **or** (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative factor of the employer's action. *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir.1994); *see also Woodson,* 109 F.3d at 920 n. 2; *Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061 (3d Cir.1996) (en banc), *cert. denied,* 521 U.S. 1129, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997); *Jalil,* 873 F.2d at 708.

"To discredit the employer's proffered reason ... the nonmoving plaintiff must demonstrate such 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reason for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act of the asserted non-discriminatory reasons." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d. Cir. 1994)).

In the context of Performance Improvement Plans, or Corrective Action Plans, a Court is not constrained to find that the implementation and following of one satisfies the legitimacy of an employers' actions – as the implementation of the plan itself could be deemed retaliatory/discriminatory by a fact finder. *Jacobson v. Utah Dep't of Corr.*, 2006 U.S. Dist. LEXIS 22458 (D. Utah Apr. 18, 2006)(the court finds that there is a question of fact as to whether DOC's actions with respect to the Corrective Action Plan and termination were motivated by Jacobson's complaints); *Todd v. Brownlee,* 2006 U.S. Dist. LEXIS 13720 (D. Haw. Mar. 9,

18

2006)(Due to the close timing between the complaint and the PIP, the Court concludes that the validity of Defendant's non-discriminatory explanation for issuing the PIP is a question of fact that cannot be determined at the summary judgment phase. The PIP may have been assessed in the course of Defendant's normal employment practices but a trier of fact must determine if Plaintiff has met her burden of showing Defendant's rationale was pretextual). In deciding whether a plaintiff has established an inference of a causal connection, a court should also consider the identity of the final decision maker. *See, e.g., Mato v. Baldauf,* 267 F.3d 444, 450 (5th Cir. 2001); *Long v. Eastfield College,* 88 F.3d 300, 306-07 (5th Cir. 1996).

Also, when a plaintiff has presented sufficient evidence to suggest that the defendant's explanation lacks credibility or that discrimination is the more likely motive, a case is made for pretext. *Burdine,* 450 U.S. at 256, 101 S. Ct. at 1095. Once the plaintiff produces evidence sufficient to permit the factfinder to disbelieve the defendant's explanation for its actions, summary judgment is not appropriate because "[i]ssues of fact and sufficiency of evidence are properly reserved for the jury." *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 921 (11th Cir. 1993).[1]

---

[1] The Court is mindful that it should "exercise caution in resolving issues of pretext on summary judgment." *Cookson v. Brewer Sch. Dep't,* 974 A.2d 276 (Me. 2009); *see also Billings v. Town of Grafton,* 515 F.3d

The Third Circuit has explained that to prove pretext, a plaintiff may rely on: (1) the defendant's credibility (or lack thereof); (2) the timing of an employee's dismissal; and (3) the employer's disparate treatment of the employee. *Josey v. John R. Hollingsworth Corp.,* 996 F.2d 632, 638-39 (3d Cir. 1993). "For example, the plaintiff may show that the employer has previously discriminated against [the plaintiff], that the employer has previously discriminated against other persons within the plaintiff's protected class, or that the employer has treated more favorably similarly situated persons not within the protected class." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.,* 142 F.3d 639, 644-45 (3d Cir. 1998), *citing Fuentes v. Perskie,* 32 F.3d 759, 765 (3d Cir. 1994).

Ms. Kelly presented more than sufficient evidence of pretext such that this issue should have been left for the jury to consider. District Court failed to weigh the record evidence as a whole in the light most favorable to Ms. Kelly. For instance, as outlined above, Ms. Douglas attempted to inflate Ms. Kelly's performance issues during her deposition by noting that the problems with Ms. Kelly had been going on for "some years" and for "quite some time." JA 411 at 187:16-24; JA 412 at 189:1-24, 190:1-3. However, Ms. Douglas confirmed that the

---

39, 56 (1st Cir. 2008)(stating that "where a plaintiff in a discrimination case makes out a prima facie case and the issue becomes whether the employer's stated nondiscriminatory reason is a pretext for discrimination, courts must be particularly cautious about granting the employer's motion for summary judgment." (internal quotation marks omitted)).

20

topic of demotion had never come up in the past. JA 401 at 145:21-23. Additionally, as outlined above, Ms. Douglas could not recall ever going HR (either to Ms. Crowley, or to any other HR employee) to discuss these issues concerning Ms. Kelly's performance prior to this last period of Ms. Kelly's employment following her last medical leave. JA369 at 18:12-19. The record is devoid of any evidence showing Ms. Douglas ever doing so before Ms. Kelly returned from her block leave in 2014, before Ms. Kelly requested accommodations and before Ms. Kelly advised Ms. Douglas fully of her condition and her need for further surgery.

Additionally, as outlined above, Ms. Douglas provided inflated testimony regarding Ms. Kelly's alleged performance issues, particularly in light of her two prior reviews of Ms. Kelly. Furthermore, contrary to Ms. Douglas (and the decision to demote Ms. Kelly in March of 2015), Ms. Stewart confirmed that Ms. Kelly was a good lead for the four years that she had worked as a lead under Ms. Stewart's supervision.

As to the alleged reason for Ms. Kelly's termination, Joann Crowley and Sophie Douglas confirmed that this infraction was not the type of infraction that would warrant immediate termination or bypassing of the regular steps in the progressive disciplinary process. JA345 at 80:15-21. 382 at 69:7-24, 70:1-20. In

21

fact, Ms. Douglas specifically testified that she had never terminated someone for this kind of infraction. JA382 at 69:20-24. Moreover, Ms. Kelly testified that during her experience as a Lead, she was well aware of other employees who had committed similar infractions with no resulting discipline. JA287 at 255:8-24, 256:1-24, 257:1-7. Moreover, these kinds of errors, including the improper handling of codes or rapid responses, were made frequently in the department with absolutely no consequences to the individuals who made the mistakes. JA508-10.

Most importantly, Ms. Kelly specifically denies the performance concerns alleged by Appellee, including the basis of the discipline that was issued to her and relied on for the demotion decision and her termination rationale. **This is the ultimate fact issue in the case**, and to grant summary judgment, the District Court improperly weighed the credibility of witnesses and evidence. It is of course reasonable to assume jurors *could disbelieve* the reason proffered by Appellee for Ms. Kelly's termination. Courts addressing claims by management that a plaintiff engaged in conduct which is directly disputed resulting in a termination should deny summary judgment. *See e.g Treaster v. Conestoga Wood Specialties, Corp.*, 2010 U.S. Dist. LEXIS 63257 (M.D. Pa. 2010)(Denying summary judgment because there was a factual dispute in that the plaintiff denied making any threats allegedly resulting in her termination); *Terry v. Ashcroft*, 336 F.3d 128 (2nd Cir.

22

2003)(reversing grant of summary judgment where there was a factual dispute as to whether the plaintiff was actually quarrelsome, which the plaintiff denied); *Windham v. Time Warner, Inc.*, 275 F.3d 179 (2nd Cir. 2003)(finding sufficient evidence of pretext where there was a factual dispute as to whether the plaintiff actually engaged in the performance concerns claimed by the employer); *Laxton v. Gap, Inc.*, 333 F.3d 572 (5th Cir. 2003)(reversing grant of summary judgment when the plaintiff directly disputed accuracy of alleged conduct resulting in termination); *Hernandez v. Spacelabs Med., Inc.* 343 F.3 1107 (9th Cir. 2003)(reversing grant of summary judgment where plaintiff was able to dispute errors forming alleged basis of termination from employment).

Additionally, the District Court failed to consider that evidence used to establish a prima facie case of discrimination and retaliation may also be relied upon to demonstrate pretext, since nothing about the McDonnell Douglas burden-shifting framework requires a court to ration the evidence presented in a particular case among the prima facie and pretext stages of the analysis. *Doe v. C.A.R.S. Protection Plus, Inc.,* 527 F.3d 358, 370 (3d Cir. 2008); *EEOC v. Grane Healthcare Co.,* 2014 U.S. Dist. LEXIS 28477, 74, 29 Am. Disabilities Cas. (BNA) 655 (W.D. Pa. 2014). In that respect, Ms. Kelly presented evidence that her direct managers expressed blatant hostility towards her FMLA use, her need for accommodations and her health condition such that a jury could conclude that

23

retaliation and discrimination were the real reasons for Ms. Kelly's demotion, write-ups and ultimate termination.

As outlined above, Ms. Kelly presented evidence that immediately upon returning from her last consecutive leave in 2014, her working environment began to change in a drastic and negative way leading all the way up to her termination. First, Ms. Kelly presented evidence that upon returning from her last medical leave in 2014, Ms. Douglas began inquiring into her medical condition and need for additional surgeries - in that same context, Ms. Kelly was then informed by Ms. Douglas that Ms. Douglas was removing her from her current group and placing her into a smaller group with less individuals to supervise (Ms. Kelly testified that prior to this, she was responsible for supervising 10 to 12 operators, but after this transfer she was only responsible for supervising 4-5 operators and felt as though responsibilities were being taken away from her due to her FMLA needs). JA285 at 249:12-24, JA286 at 250:1-21. Ms. Kelly made clear to Ms. Douglas, that she would require additional consecutive/block leaves for additional required surgeries. JA286 at 250:13-24, 251:1-11, JA288 at 259:1-10. *See also* Plaintiff's return to work letter from her doctor noting that the duration of her condition would be for "years". JA502. *See also* Plaintiff's Certification of Health Care Provider noting that Plaintiff's condition would be from "now" until "many year from now" and

specifically identifying that Plaintiff is limited in doing anything that causes substantial hip or knee pain. JA503-504. Moreover, Tammy Stewart, also testified that she was aware that Plaintiff would need additional surgeries. JA461 at 80:10-17.

Just days after Ms. Kelly returned from her leave in 2014, Ms. Douglas sent an email to Joann Crowley on November 4, 2014 informing Ms. Crowley that Ms. Kelly needed to be "monitored carefully" (referencing her prior FMLA usage and in response to Plaintiff providing detailed information about her medical conditions and a request for an accommodation). JA531. Ms. Douglas suggested to both Ms. Kelly and Joanne Crowley that Ms. Kelly go out on long-term disability. JA473A at No. 5. *See also* 531; JA392 at 111:13-24, 112:1-2. JA349 at 93:4-8. Ms. Douglas also told Ms. Kelly that she was a great employee, that she did a very good job, ***but that she was out too much and suggested that Ms. Kelly go back to being an operator***. JA286 at 253:3. Ms. Kelly was employed by Defendant from 1991 through her termination in 2015. Furthermore, Ms. Kelly was in the lead position for ***over nine years*** before her demotion from that position in March of 2015. The record shows that Ms. Douglas was contemplating demoting Ms. Kelly immediately upon learning about the nature and extent of her medical condition and Ms. Kelly's need for additional leaves and surgeries.

Additionally, After coming back from her leave in 2014, Ms. Kelly was told by Ms. Stewart that she needed to slow down on her FMLA usage. JA228A at 18:3-9. Ms. Kelly also adduced evidence that she experienced hostility in relation to her need for certain accommodations. As discussed above, Ms. Kelly testified that when she returned from her last medical leave, she requested that she be permitted to use a different entrance. In response to this request, Ms. Kelly learned that Ms. Douglas had instructed the security guard not to allow Ms. Kelly to do this, and when Ms. Kelly confronted Ms. Douglas, Ms. Douglas explained that she would not allow Ms. Kelly to do this because then she would have to do it for everyone. JA272 at 194:21-24, 195:1-13. Ms. Kelly also requested that she be permitted to walk around when her joints were stiff and she was in pain, however Ms. Kelly testified that she was only permitted to do this on her breaks rather than as needed for her pain. JA272 at 194:21-24, 195:1-13.

Additionally, Ms. Kelly presented substantial evidence that during the same timeframe when she began to experience hostility and blatant frustration from Ms. Stewart and Ms. Douglas in connection to her medical condition and need for leave, there was a great deal of similar  frustration expressed in general towards other employees' in Ms. Kelly's department with similar needs. For example, Ms. Kelly presented evidence that Ms. Stewart expressed her frustration regarding the

26

use of FMLA in the department, stating "*why can't these people just show up for work*", further noting that she would have to speak with Ms. Douglas about it and that they *would have to do something about the FMLA usage*. JA286 at 251:21-24. Appellee's HR Manager, Ms. Crowley, confirmed this blatant frustration by testifying that both Ms. Douglas and Ms. Stewart expressed frustration to her in connection with Ms. Kelly's need for leave noting that they stated that they "*just want people to come to work*" and that Ms. Douglas had specifically memorialized this in an email. JA351 at 102:16-24, 103:1-4. Ms. Crowley further testified that Ms. Douglas had noted this frustration in general as well regarding the use of FMLA in the department overall, noting again that *Ms. Douglas had informed her that she just didn't understand why people couldn't just come to work*. JA341 at 59:14-17. Although Ms. Crowley advised Ms. Douglas that FMLA was the law and she would have to comply, Ms. Crowley testified that Ms. Douglas was still frustrated and that she came to Ms. Crowley on more than one occasion to express her frustration. JA339 at 54:15-24, 55:1-6, 56:9-24, JA341 at 57:1-24, 58:1-24, 59:1-17, JA341A at 61:16-21. Ms. Crowley also confirmed that Ms. Stewart had expressed similar frustrations on more than one occasion as well. JA341 at 63:1-24, 64:1-10.

Third Circuit jurisprudence instructs that the District Court to look at the record as a whole on summary judgement. Viewing the record as a whole, there is clearly more than a scintilla of evidence from which a reasonable factfinder could construe retaliation and discrimination against Ms. Kelly. This is precisely the reason why the Court in *Doe v. C.A.R.S. Prot. Plus*, 527 F.3d 358, 369 (3d Cir. Pa. 2008) explained that "summary judgment is to be used ***sparingly*** in employment discrimination cases." In addition to failing to construe the evidence in the light most favorable to Ms. Kelly with respect to her alleged write-ups and demotion, the District Court also failed to consider that a jury would be permitted to rely on the other blatant evidence of hostility and discriminatory comments towards Ms. Kelly's medical conditions and need for leave at in evaluating whether or not to accept Appellee's stated reason for Ms. Kelly's termination. In doing so, the District Court improperly weighed the evidence in favor of Appellee and failed to construe this evidence as a whole in the light most favorable to Ms. Kelly.

## **CONCLUSION**

For the foregoing reasons, Ms. Kelly respectfully requests reversal of the District Court's decision, and submission of this matter to a jury.

28

Respectfully Submitted,

**KARPF, KARPF & CERUTTI, P.C.**

*/s/ Julia W. Clark*
Julia W. Clark, Esq.
3331 Street Road
Two Greenwood Sq., Suite 128
Bensalem, PA 19020
215.639.0801
PA Bar No.: 311688
Attorney for Appellant

Date: February 21, 2017

## UNITED STATES COURT OF APPEALS FOR THE
## THIRD CIRCUIT

| | |
|---|---|
| BRENDA KELLY | : |
| | : |
|      Appellant, | : |
|   v. | :   CASE NO.: 16-3303 |
| | : |
| UNIVERSITY OF PENNSYLVANIA | : |
| HEALTH SYSTEM, d/b/a PENN | : |
| MEDICINE | : |
| | : |
|      Appellee. | : |
| | : |

## <u>CERTIFICATION</u>

Julia W. Clark, counsel for Appellant, hereby certifies that she is a licensed attorney in good standing admitted to practice in Pennsylvania and New Jersey and more specifically in the Third Circuit Court of Appeals.

Respectfully Submitted,

**KARPF, KARPF & CERUTTI, P.C.**
*/s/ Julia W. Clark*
Julia W. Clark, Esq.
3331 Street Road
Two Greenwood Sq., Suite 128
Bensalem, PA 19020
215.639.0801
PA Bar No.: 311688
Attorney for Appellant

Date: February 21, 2017

## UNITED STATES COURT OF APPEALS FOR THE
## THIRD CIRCUIT

| | | |
|---|---|---|
| BRENDA KELLY | : | |
| | : | |
|      Appellant, | : | |
|    v. | : | CASE NO.: 16-3303 |
| | : | |
| UNIVERSITY OF PENNSYLVANIA | : | |
| HEALTH SYSTEM, d/b/a PENN | : | |
| MEDICINE | : | |
| | : | |
|      Appellee. | : | |

## CERTIFICATION OF WORD COUNT

Julia W. Clark, counsel for Appellant, hereby certifies that the Legal

Argument portion of the Appeal Brief submitted in this matter contains 6,387,

exclusive of tables and certifications.

Respectfully Submitted,

**KARPF, KARPF & CERUTTI, P.C.**

*/s/ Julia W. Clark*
Julia W. Clark, Esq.
3331 Street Road
Two Greenwood Sq., Suite 128
Bensalem, PA 19020
215.639.0801
PA Bar No.: 311688
Attorney for Appellant

Date: February 21, 2017

# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

BRENDA KELLY                  :

                                  :

        Appellant,        :

    v.                      :      CASE NO.: 16-3303

                                    :

UNIVERSITY OF PENNSYLVANIA   :

HEALTH SYSTEM, d/b/a PENN      :

MEDICINE                    :

                                  :

        Appellee.         :

                                  :

## **CERTIFICATION**

Julia W. Clark, counsel for Appellant, hereby certifies that Appellant's Brief

in PDF Form is identical to the hard copy form filed with the Court.

Respectfully Submitted,

**KARPF, KARPF & CERUTTI, P.C.**

*/s/ Julia W. Clark*
Julia W. Clark, Esq.
3331 Street Road
Two Greenwood Sq., Suite 128
Bensalem, PA 19020
215.639.0801
PA Bar No.: 311688
Attorney for Appellant

Date: February 21, 2017

## UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

BRENDA KELLY                                    :
                                                :
       Appellant,                           :
    v.                                        :      CASE NO.: 16-3303
                                                :
UNIVERSITY OF PENNSYLVANIA                      :
HEALTH SYSTEM, d/b/a PENN                       :
MEDICINE                                        :
                                                :
       Appellee.                            :
_____:

## CERTIFICATION

Julia W. Clark, counsel for Appellant, hereby certifies that Appellant's Brief

was subjected to a virus check on February 21, 2017 using Webroot software.

Respectfully Submitted,

**KARPF, KARPF & CERUTTI, P.C.**

*/s/ Julia W. Clark*
Julia W. Clark, Esq.
3331 Street Road
Two Greenwood Sq., Suite 128
Bensalem, PA 19020
215.639.0801
PA Bar No.: 311688
Attorney for Appellant

Date: February 21, 2017

## UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

BRENDA KELLY                                        :
                                                    :
           Appellant,                               :
     v.                                             :         CASE NO.: 16-3303
                                                    :
UNIVERSITY OF PENNSYLVANIA                           :
HEALTH SYSTEM, d/b/a PENN                            :
MEDICINE                                            :
                                                    :
           Appellee.                                :
                                                    :

## CERTIFICATE OF SERVICE

Julia W. Clark, counsel for Appellant, hereby certifies that Appellant's Brief

has been filed electronically in PDF format via ECF and that seven (7) hard copies

of the Brief  and four (4) hard copies of the Joint Appendix have been sent to the

Clerk's Office via Federal Express at the following address:


Clerk of Court
Third Circuit Court of Appeals
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

I further certify that I served two (2) true and correct copies of the foregoing

Brief and Joint Appendix, by mail, upon the following:

34

Eric C. Kim, Esq.
Jeffrey A. Sturgeon, Esq.
Morgan Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103

Respectfully Submitted,

**KARPF, KARPF & CERUTTI, P.C.**

*/s/ Julia W. Clark*
Julia W. Clark, Esq.
3331 Street Road
Two Greenwood Sq., Suite 128
Bensalem, PA 19020
215.639.0801
PA Bar No.: 311688
Attorney for Appellant

Date: February 21, 2017